## COMMONWEALTH vs. JAMES W. SHERIDAN.

No. 99-P-1590.

Berkshire. June 7, 2000. - February 27, 2001.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Practice, Criminal,* Revocation of probation, Sentence. *Due Process of Law,* Probation revocation, Sentence.

Where a sentencing judge ordered a criminal defendant's probation sentence to commence "from and after any sentence [the] defendant is now serving," a motion judge properly determined, consistent with the purposes of probation, that the defendant's probation term did not begin in 1994, upon the defendant's completion of his State prison sentence, but in 1999, upon the defendant's release to the community from an intervening civil commitment to a treatment center for sexually dangerous persons [76-77, 79]; further, the defendant's claims that the five-year difference resulted in a denial of due process or in prejudice were without merit [77-78].

Where a criminal defendant, who had transferred his probation from Massachusetts to New York, failed to comply with New York's conditions of probation, in violation of his agreement to return, signed pursuant to the Interstate Supervision of Probation and Parolees Act, G. L. c. 127, §§ 151A-151K, a Massachusetts judge correctly found the defendant in violation of probation and revoked the defendant's probation in Massachusetts. [79-80]

INDICTMENTS found and returned in the Superior Court on October 7, 1975.

The cases were tried before *Charles R. Alberti,* J.

A status hearing was held before *Daniel A. Ford,* J., and an order extending probation was entered by him on May 14, 1999; an order revoking probation was entered on July 8, 1999, by *Elizabeth Bowen Donovan,* J.

The case was submitted on briefs.

*Henry Lebensbaum* for the defendant.

*David F. Capeless,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant appeals from two orders entered in

the Berkshire County Superior Court: an order determining that his probationary term was to commence upon his release from the Nemansket Correctional Center (treatment center) and an order revoking his probation and committing him to a house of correction.

1. *The commencement of probation.* We recite those facts pertinent to our analysis of the first issue raised by the defendant, that the judge's order determining the time the defendant's probation term commenced was improper.

On May 20, 1976, following a jury trial in Berkshire county, the defendant was convicted on two indictments charging him with rape. He was sentenced to twelve to twenty years to be served at M.C.I., Cedar Junction. On February 22, 1978, while serving that sentence, he was convicted of two counts of assault and battery, both of which occurred before his imprisonment for the rapes. A Superior Court judge (sentencing judge) sentenced the defendant to eighteen months in a house of correction, suspended, with three years' probation, to be served "from and after any sentences [he] is now serving."[1]

On October 26, 1984, after the above sentences were imposed, the defendant was adjudicated a sexually dangerous person and was committed to the treatment center for a period of one day to life. *Sheridan, petitioner,* 412 Mass. 599, 600 (1992). On January 4, 1994, the Department of Correction notified the defendant at the treatment center that he had completed his State prison sentences on the rape convictions. The defendant, however, was not discharged from custody because he was still confined to the treatment center as a sexually dangerous person. After receiving notice that he had completed the State prison sentences, the defendant wrote to the Berkshire county probation department (probation department) stating that he was ready to begin his term of probation. In response, the probation department notified the defendant on May 5, 1994, that his probation term would start after his release from the treatment center.

On May 7, 1999, a Suffolk County jury returned a verdict stating that the defendant was no longer a sexually dangerous person within the meaning of G. L. c. 123A, § 1. As a result, the defendant was scheduled for release from the treatment

---

[1]The judge imposed identical sentences on the two assault and battery indictments and ordered that the sentences run concurrently.

center on May 17, 1999. Prior to the defendant's release, the probation department requested that a hearing be held in Superior Court to determine the status of the defendant's probation sentence which had been imposed on February 22, 1978.

On May 14, 1999, a nonevidentiary hearing was held before a Superior Court judge (motion judge).[2] The probation department requested that the motion judge order that the defendant's probation term was to begin on the date of his release from the treatment center, May 17, 1999. The defendant argued, however, that his probation sentence had commenced upon the completion of his State prison sentence (January 4, 1994) and had terminated three years later, in January of 1997.

The motion judge rejected the defendant's argument and ruled that it was the intent of the sentencing judge that, after the defendant's release from a lengthy incarceration for "a very serious crime," he "would be supervised by probation for some time period so that he would have the benefit of some structure and some assistance and some supervision, which . . . a person who has been incarcerated for twenty-three years obviously might need" in order "to assist that person in the transition from life behind bars to life not behind bars." The motion judge ordered that the probation sentence was to commence on May 17, 1999, the date of the defendant's release from the treatment center.

On appeal, the defendant first claims that the motion judge committed error in interpreting the sentencing judge's intent. The defendant argues that, because the sentencing judge ordered the probationary sentence to commence "from and after any sentence [the] defendant is now serving," it was the sentencing judge's intent that the defendant be placed on probation at the conclusion of his State prison sentence. We reject the defendant's argument because it ignores the purposes of probation.

"Probation, whether 'straight' or coupled with a suspended sentence, is a legal disposition which allows a criminal offender to remain in the community subject to certain conditions and under the supervision of the court." *Commonwealth* v. *Durling*, 407 Mass. 108, 111 (1990). *Commonwealth* v. *Taylor*, 428 Mass. 623, 626 (1999). The purpose of a probationary sentence is "rehabilitation of the probationer and protection of the public."

---

[2]The sentencing judge had retired; therefore another Superior Court judge heard the motion.

*Commonwealth* v. *Phillips*, 40 Mass. App. Ct. 801, 804 (1996), quoting from *Commonwealth* v. *Power*, 420 Mass. 410, 414 (1995), cert. denied, 516 U.S. 1042 (1996). It is granted "with the hope that the probationer will be able to rehabilitate himself or herself under the supervision of the probation officer." *Commonwealth* v. *Olsen*, 405 Mass. 491, 493 (1989).

We are sure that the experienced sentencing judge was aware of the purposes of probation. By imposing the probationary sentence to commence after the sentences the defendant was then serving, it is clear the sentencing judge intended the defendant to be supervised by a probation officer at the time he was released from custody and returned to the community. In our view, the fact that the defendant's release to the community was delayed because of an intervening civil commitment did not change the sentencing judge's intent to have the defendant supervised upon his release from custody.

Further, we reject the defendant's argument that his probationary sentence ran concurrently with his commitment at the treatment center. While committed to the treatment center, the defendant was separated from society and in an institutionalized setting that eliminated any need for the supervision of a probation officer. See *Commonwealth* v. *Juzba*, 44 Mass. App. Ct. 457, 459-461 & n.3 (1998) (suggesting that probation does not serve any useful purpose when the probationer is still in custody). The two goals of probation — rehabilitation under the supervision of a probation officer and the protection of society — are only brought into play when the offender is released into the community.[3]

The defendant also argues that he suffered a substantial denial

---

[3]The defendant also claims that G. L. c. 123A, § 6 (repealed by St. 1990, c. 150, § 304), applies to him because he was committed as a sexually dangerous person in 1984, before the statute was repealed. That statute provides, as appearing in St. 1985, c. 752, § 1, in pertinent part, that "[a] person who is committed under this section shall serve his sentence concurrently with the commitment." Therefore, the defendant argues, his probationary sentence ran concurrently with his commitment to the treatment center.

We reject the defendant's argument. That provision was inserted in c. 123A, § 6, by St. 1982, c. 752, § 1 (which rewrote c. 123A); St. 1985, c. 752, § 4, provided that G. L. c. 123A, § 6, as rewritten did not apply to persons sentenced for offenses committed prior to the effective date of the revised statute. The defendant was sentenced for offenses committed prior to passage of the revised act. Even if the provision were applicable, it was the State prison sentence that ran concurrently with the commitment to the treatment center, not the probationary sentence.

of due process and fundamental fairness as a result of the motion judge's ordering that his probation sentence commence some five years after the expiration of his State prison sentence. Specifically, the defendant claims that the length of the delay was unreasonable, that the Commonwealth failed to make diligent efforts to commence or extend probation, and that the delay prejudiced him. Therefore, the Commonwealth waived any jurisdiction over him, the defendant contends, citing *Commonwealth* v. *Sawicki*, 369 Mass. 377 (1975); *Zullo, petitioner*, 420 Mass. 872 (1995); and *Commonwealth* v. *Mitchell*, 46 Mass. App. Ct. 921 (1999). In *Sawicki* and *Mitchell*, the issue before the court was whether a delay in revoking or extending probation because of a probation violation was unreasonable; and in *Zullo*, whether the parole board's delay in serving a parole revocation warrant was unreasonable. The defendants in all three cases claimed the delays impacted their liberty.

Here, the defendant is not challenging the status of a probation or parole violation but rather the status or time of commencement of his probation sentence. The defendant did not suffer any adverse consequence with respect to his liberty due to the delayed commencement of his probation sentence, because between 1994 and 1999 he was still committed to the treatment center as a sexually dangerous person. In view of the fact that the defendant was committed for a period of one day to life to the treatment center, the probation department had no reason to take any affirmative steps to determine the defendant's probation status until, if ever, he became eligible for release. Once the defendant did become eligible, the probation department acted promptly to bring the matter before the Superior Court in order to determine the status of the probation sentence.

The defendant's claim that he was prejudiced by the delay is without merit. He was advised by the probation department in May, 1994, that he was to contact the probation department upon his release from the treatment center. The defendant failed to take any action between May of 1994 and 1999 to challenge the probation department's claim that his probation was to commence upon his release from the treatment center. His own inaction belies his claim of prejudice because of the alleged delay.

The other objections to the motion judge's order are without merit and we therefore treat them summarily.

General Laws c. 279, § 8A (which provides that, for purposes of commencing a "from and after" sentence, a previous sentence shall be deemed to have expired when the prisoner has been "released therefrom by parole or otherwise"), does not support the defendant's argument that his probation sentence commenced after the expiration of his State prison sentence. The statute applies "only to consecutive *committed* sentences." *Delisle* v. *Commonwealth*, 416 Mass. 359, 362 (1993) (emphasis original).

The four-year delay did not violate the defendant's constitutional right to a speedy trial or Mass.R.Crim.P. 36(b)(1)(D), 378 Mass. 910 (1979).[4] The constitutional provision and the rule speak only to the rights of defendants awaiting trial, not to the commencement of a sentence after trial.

In sum, the judge did not commit error in determining that the defendant's probationary sentence commenced after the defendant's release from the treatment center.

2. *The revocation of the defendant's probation.* After his release from the treatment center, the defendant reported to the probation department, signed conditions of probation, and requested and was given permission to have his probation transferred to New York State. Pursuant to the Interstate Supervision of Probation and Parolees Act, G. L. c. 127, §§ 151A-151K, the defendant signed an agreement to return, which mandated that he comply with the conditions of probation established by both the Berkshire Superior Court and the State of New York. Failure to so comply, according to the agreement, would be deemed to be a violation of probation resulting in the defendant's return to the Commonwealth.

In New York, the probation authorities imposed several conditions, including requiring the defendant (1) to wear an electronic monitoring bracelet, (2) to obtain a sex offender evaluation, (3) to undergo urinalysis testing, and (4) to abide by a curfew. The defendant objected and filed an action in the New York Supreme Court claiming that the conditions were unreasonable. After a hearing, a judge made several minor modifications to the terms and conditions of the defendant's probation and determined that

---

[4]Rule 36(b)(1)(D) provides that, if a retrial is ordered, "the trial shall commence within one year after the date the action occasioning the retrial becomes final . . . ."

the remaining conditions were reasonable.[5] The defendant left the New York courthouse, cut off the electronic monitoring bracelet, and went to Massachusetts. He appeared at the probation department in Berkshire County, and a judge ordered him to be held in custody until a probation revocation hearing could be held.

The defendant was then served with a notice of violation of probation. The violations cited noncompliance with the probation conditions imposed by the New York authorities and leaving New York State without permission. After a hearing, the defendant was found to be in violation of probation and the judge ordered him to be committed for eighteen months in a house of correction. The defendant appealed from the order revoking his probation, claiming that the probation terms imposed by the New York authorities were egregious and amounted to house arrest.

In the agreement to return, the defendant had agreed to comply with conditions of probation established by the Berkshire County Superior Court and the New York probation authorities, and the agreement advised the defendant that failure to do so would be considered a violation of probation resulting in the defendant's return to Massachusetts.

It is clear that the defendant violated the conditions of probation and therefore his probation was properly revoked in Massachusetts.

The order of May 14, 1999, and the order of July 8, 1999, revoking the defendant's probation are affirmed.

*So ordered.*

---

[5]The changes to the probationary conditions consisted of clarifying the time of electronic monitoring and eliminating the curfew and the prohibition against jogging or bicycling.