Cratsley, J.
BACKGROUND
All of the following information is taken from the Commonwealth’s presentation to the Grand Jury on May 7, 2003.
The defendant, Richard Aspen, asks this court to dismiss the two indictments against him pursuant to Commonwealth v. McCarthy, 385 Mass. 160 (1982). The defendant argues that the Commonwealth provided insufficient evidence to the Grand Jury for these two indictments to have issued. The first indictment charges criminal contempt in that the defendant knowingly and intentionally, while having the ability, failed to comply with an outstanding order of the court found in the terms of his probation, and the second indictment charges that the defendant failed to comply with a court order issued under the provisions ofM.G.L.c. 209A. For the following reasons, defendant’s motion to dismiss the first indictment is ALLOWED and his motion to dismiss his second indictment is DENIED.
On March 31, 2003, Jacqueline Cirone, born on March 16, 1972, received a birthday card from her natural father, Richard Aspen, the defendant. The card wished her a happy 21 st birthday and invited her to correspond with him if she was interested. The card was sent to Jacqueline Cirone at her address in North Adams, Massachusetts where she attended the Massachusetts College of Liberal Arts. Upon receipt of the card, Jacqueline recognized the return address and handwriting to be that of her father, Richard Aspen. On March 31, 2003 she contacted her mother, Martha Cirone, about her receipt of the card. Her mother advised Jacqueline to bring the card home with her to Franklin, Massachusetts the following weekend.
Martha Cirone reported a violation of an abuse prevention order to the Norfolk County District Attorneys Office and notified Denise Dickhowt, a Department of Corrections (DOC) Victims Advocate, that Richard Aspen had mailed a letter to his daughter.
On April 8, 2003, State Trooper Hayes, assigned to the Norfolk County District Attorney’s Office, contacted Martha Cirone by telephone to follow up on her report. She indicated there was a permanent restraining order against Richard Aspen that was issued out of Wrentham District Court and the permanent order included herself, daughters Jacqueline Cirone and April Petit and her stepson Mark Pettit. On April 9, 2003, Martha Cirone turned over the letter to Trooper Hayes and identified the writing on the envelope and card as that of David Aspen.
During Denise Dickhowt’s investigation for the DOC Victims Service Unit, David Aspen admitted sending the birthday card to his daughter and stated he got her address from his attorney. These acts of his were noted in a disciplinary report dated April 1, 2003.
A restraining order was issued against David Aspen on May 28, 1996. The plaintiffs were listed as Martha Aspen, now known as Martha Cirone and obo (“on behalf of’) Jacqueline Aspen. Martha Cirone was also awarded custody of Jacqueline Aspen noted on Section 6 of the order. Section 7 of the order stated that defendant was to have no contact with the children listed above in section 6, or any children in the plaintiffs custody listed below in section 7. In August of 2000, Jacqueline Aspen changed her last name to that of her mother and became Jacqueline Cirone shortly before entering college. The types of forbidden contact specified in the order included in person, telephone, in writing or otherwise, unless written permission is received from the court to do otherwise, under the terms of section 7. The 209A order states on the front page in bold capital letters that a violation of this order is a criminal offense.
On May 27, 1997, the 209A order was further extended and made permanent. This was noted in section D of the order under the heading, Further Extension. Delivery of the permanent restraining order was made in hand to Richard Aspen by an officer of the Barre Police Department in Barre, Massachusetts on June 1, 1997 with a return of service filed at Wrentham District Court. To date, no requests or modifications to the order have been made by the defendant or his attorney. The mailing of the birthday card was the first time David Aspen had made contact with Jacqueline since the original effective date of the restraining order.
On March 4, 1998, the defendant was convicted of rape of a child under 16 and sentenced to 25 to 30 *240 years in state prison. (Docket 101984.) On the same date, he was convicted of several counts of rape and sentenced 19 to 20 years in state prison and 8 to 10 years for indecent assault and battery to run concurrently with his sentence for rape of a child. (Docket 102765.) The victim in those cases was David Aspen’s stepdaughter, April Pettit, whose date of birth is March 18, 1972. The judge on one of the rape convictions (Docket 102765) gave the defendant 10 years probation from and after his sentence for rape of a child (Docket 101984) with one of the probationary conditions providing that he have no contact with April Pettit or the family. The family included Martha Cir-one, Jacqueline Cirone, and her brother Mark Pettit whose birth date is April 13, 1969.
ANALYSIS
First Indictment: Violation of 209A Restraining Order
After careful consideration of the evidence presented to the Grand Jury, this Court finds that the Grand Jury correctly indicted the defendant for violating a 209A restraining order. In summary, there was enough evidence presented to them to find probable cause to believe the defendant, David Aspen, violated the no contact order issued pursuant to G.L.c. 209A.
Violation of an abuse prevention order under M.G.L.c. 209A, §7 has the following elements (1) that an order was issued by the court and effective on the date of the alleged violation, (2) that the defendant knew of the order, (3) that the defendant knew of its terms, and (4) that the defendant violated those terms. Commonwealth v. Raymond, 54 Mass.App.Ct. 488, 492 (2002).
The defendant admits that he contacted his daughter by writing her a birthday card on her 21st birthday, but contends that the 209A order was not in effect at the time of his contact because she was an emancipated adult. He asserts that as matter of law she was no longer a child covered under the permanent order. Moreover, the defendant asserts a violation of the Due Process Clause of the Fourteenth Amendment, claiming that if the order was permanent, it was not sufficiently clear to a person of ordinary intelligence to know the conduct he did in sending her a birthday card was prohibited and there was lack of fair notice to know the order was in effect when Jacqueline Cirone became an emancipated adult.
This Court finds that the Grand Jury was presented with enough evidence to find probable cause that the permanent order issued on May 27, 1997 was valid and enforceable for Jacqueline Aspen, now known as Jacqueline Cirone. I make this decision based on the following relevant facts presented to the Grand Jury as well as the public policy to protect families from the effects of domestic violence reflected in G.L.c. 209A.
During the Grand Juiy testimony, the 209A order was offered and marked as Exhibit 3. On its face, Martha Aspen, now known as Martha Cirone, and her daughter Jacqueline Aspen were listed as the plaintiff on the order. (Exhibit 3, pg. 1.) Jacqueline Aspen is the natural daughter of the defendant and later changed her last name to Cirone. (Page 15.) In the order, Martha Cirone was awarded custody of Jacqueline. Section 7 orders the defendant not to contact the children listed in sections 6 or 7. On May 27, 1997 the Wrentham District Court made the original order a permanent order. (Exhibit 3, pg. 2.) This is confirmed by section D under Further Extension as “made permanent.” The defendant was served notice of the permanent order on June 1, 1997 and records support his receipt of that notice. (Page 18.) The defendant has made no request for modification of the order since its effective date. (Page 13.) After the reported violation on March 31, 2003, the Norfolk County District Attorneys Office and the DOC Victims Crime Unit investigated the offense. (Pages 4, 7.)
Since Jacqueline was listed as the plaintiff with her mother and as a child in custody, a reasonable inference could be drawn by the grand jurors that the order applies to Jacqueline Cirone. Moreover, when the order was made permanent, it was recorded under the Further Extension section as being “made permanent” and proper notice of this designation was made to the defendant on June 1, 1997 by the Barre Police Department. No request has ever been made by the defendant to modify the order and no modifications have been made since its permanent extension on May 27, 1997. Even though the order listed Jacqueline Aspen as one of the plaintiffs, the grand jurors did learn that she changed her name to Cirone. (Page 15.) In addition, both the DOC Victims Crime Unit and the Norfolk County District Attorneys Office proceeded with their investigation as if the mother and daughter both had a valid 209A order. A violation of the order was noted on the defendant’s prison disciplinary report further supporting the inference that the order was valid and applied to Jacqueline Cirone. (Pages 13-14.)
Furthermore, the grand jurors could well conclude that sound public policy supports the inference that permanent 209A orders apply to all plaintiffs originally listed regardless of whether one or more of them become an emancipated adult. In Crenshaw v. Macklin, 430 Mass. 633, 636 (2000), the Supreme Judicial Court (SJC) held that permanent orders can be issued by the court and that the determination to extend the order or shorten its duration is at the judges broad discretion regarding what is deemed reasonably necessary to protect the abused person.
For this court to acknowledge a loophole by which family members are not covered under a protective order once they become emancipated adults would be inconsistent with the overwhelming public policy to protect adults and children from domestic violence. Litchfield v. Litchfield, 55 Mass.App.Ct. 354, 356 (2002). Considering this public policy, any reasonable grand juror could conclude that making a permanent *241 order applicable to a parent and child with no intent of expiration was legally sound.
In summary, both the facts presented to the Grand Jury and the case law surrounding the validity of 209A restraining orders establish that the Grand Jury heard enough evidence to have probable cause to believe that a valid 209A order existed on behalf of Jacqueline Cirone on March 31, 2003.
This Court also finds the Grand Jury heard enough evidence to warrant a finding of probable cause on the remaining elements of a 209A violation, i.e., that the defendant knew the terms of the outstanding order and that he violated those terms.
The 209A order specifies activity that is prohibited under the no contact provision in Section 7 and applies the prohibitions to the children listed, which includes Jacqueline Cirone. Furthermore, Section 2 orders the defendant not to contact the plaintiff, which in this case includes Jacqueline Cirone and her mother Martha Cirone. The prohibited activity ordered in Sections 2 and 7 includes no contact in person, in writing or otherwise (Exhibit 3, pg. 1), and the order states in bold letters that violation of this order is a criminal offense. The defendant admits to writing the birthday card (Page 14), and the defendant’s handwriting was positively identified on the envelope and on the card by both Martha Cirone and Jacqueline Cir-one. (Pages 7, 17.) All this testimony supports the probable cause determination by the Grand Jury regarding a violation of G.L.c. 209A, by the defendant engaging in prohibited contact with his daughter.
The Grand Jury heard that the defendant was served notice of the permanent order by hand on June 1, 1997, and documentation was provided to the Grand Jury to support the defendant’s receipt of the permanent order. (Page 18.) This notice allowed the grand jurors to conclude the defendant knew the terms of the 209A order issued against him.
Therefore, this Court finds the evidence presented to the Grand Jury was sufficient to establish probable cause for them to believe (1) that a valid 209A order was in effect, (2) that the defendant knew of the order, (3) that the defendant knew of the specific terms of the order, and (4) that he violated those terms.
The defendant also asserts a due process claim that the notice of the permanent 209A order was not sufficiently clear to a person of ordinary intelligence to know what conduct was prohibited, i.e. that he did not have fair notice that the order was considered permanent with respect to Jacqueline Cirone when she became an emancipated adult.
Jacqueline Cirone is listed twice on the 209A order, first as the plaintiff, and second as a child awarded custody to Martha Cirone in Section 6. On its face, the 209A order specifies that written contact is prohibited and that contact of that nature applies to both the plaintiff and any children listed in Sections 6 & 7. Since no written contact is specifically stated on the 209A order as prohibited conduct, this language requires no interpretation. Furthermore, the order was made permanent under Section D, Further Extension, by the notation and signature of the judge. (Exhibit 3, pg. 2.) The defendant was also properly notified of the permanent designation of the 209A order on June 1, 1997, by the Barre police department.
Testimony on these facts presented to the Grand Jury supports this Court’s conclusion that the 209A order was sufficiently clear for the defendant to know that sending a birthday card would be considered a writing prohibited by the order. In this Court’s view, he had fair notice to know that the permanent 209A order applied to his daughter, Jacqueline Cirone. Furthermore, even if the defendant was uncertain if the order was valid and if it applied to Jacqueline as an emancipated adult, our case law holds that a defendant will not be relieved from criminal responsibility for his actions when he doubts the validity of the 209A order and takes the risk that his judgment might be in error. Commonwealth v. Leger, 52 Mass.App.Ct. 232, 241 (2001).
In conclusion, this Court finds the defendant’s due process claim is not valid since the 209A order was sufficiently clear to a person of ordinary intelligence to know what conduct was prohibited and he had fair notice that the permanent order applied to his daughter Jacqueline Cirone.
Second Indictment: Violation of an Outstanding Order of the Court
While filed as a McCarthy motion which usually tests the sufficiency of the Commonwealth’s presentation to the Grand Jury, this motion to dismiss the second indictment presents a legal issue regarding the use of contempt to enforce a probationary term which has been imposed as part of a from and after sentence. In this Court’s opinion, resolution of this legal issue means that this Court does not have to weigh the sufficiency of the evidence presented to the Grand Jury. On the other hand, for similar reasons the evidence before the Grand Jury is, in fact, insufficient to establish probable cause to believe the defendant committed the crime charged in this indictment.
Criminal contempt requires proof (1) that there was a clear and outstanding order of the court, (2) that the defendant knew of the order, and (3) that the defendant clearly and intentionally disobeyed the order in circumstances in which he was able to obey it. Furtado v. Furatdo, 380 Mass. 137, 145 (1980).
The legal issue raised by the second indictment for contempt of an outstanding order of the court turns on whether the defendant’s probation terms, given as part of a from and after sentence, were effective during his incarceration when it is alleged he made contact with Jacqueline Cirone and violated the outstanding 209A order.
*242 The Commonwealth argues that the probation term of “no contact” with the family of April Petit, which includes Jacqueline Cirone, was a clear and outstanding order of the court as part of the defendant’s from and after sentence imposed on March 4, 1998. Even though the defendant’s probationaiy period had not begun on that date, the Commonwealth argues that he was subject to those terms based on the Appeals Court decision in Commonwealth v. Phillips, 40 Mass.App.Ct. 801, 802-05 (1996).
Case law differs on the subject of probation revocation during incarceration with the key factor apparently being whether the probation term allegedly violated is part of a sentence running concurrently with the prison sentence or part of a from and after sentence to begin when the defendant is released. The case law also appears to make a distinction between the use of a new criminal conviction occurring while imprisoned to revoke a not yet started probation term and all other situations involving from and after probations.
The Appeals Court held in Commonwealth v. Phillips, 40 MassApp.Ct. 801, 805 (1996), that a defendant may be subject to probation revocation based on criminal conduct occurring after imposition of a prison sentence, but before the commencement of a probationary period. In that case, the basis for Phillip’s probation revocation was a conviction for a new crime committed while imprisoned, but before his probation was scheduled to begin.
In Commonwealth v. Sheridan, 51 Mass.App.Ct. 74, 77 (2001), the Appeals Court held that his probation was not effective until release from civil confinement. Moreover, while the court can sentence a defendant to probation during their period of incarceration, there must be something stated at the time of sentencing to indicate that the judge had that idea in mind. Commonwealth v. Juzba, 44 Mass.App.Ct 457, 459 (1998). Juzba wanted his probation to be deemed as started when his penal sentence began, but as Judge Kaplan made clear, a from and after probationaiy term dictated by the sentencing judge begins after the defendant’s release:
A judge is not barred from placing a defendant on probation during his period of incarceration. Here, however, the notations are themselves quite clear that the trial judge had no such exotic idea and was doing the conventional thing, so that probation fell in upon the defendant’s release, with the balance of his five to seven year sentence hanging over his head.
Id. at 459-60.
Unlike the factual situation in Commonwealth v. Phillips, the Commonwealth seeks in this case to prosecute Richard Aspen by an indictment for criminal contempt for violation of a no contact provision of the defendant’s probation term, not to revoke the defendant’s probation. This distinction is significant because of the case law stating that, unless otherwise indicated, from and after probation is to take effect upon release from incarceration with respect to split sentences and from and after sentences. Commonwealth v. Sheridan, 51 Mass.App.Ct. at 77; Commonwealth v. Juzba, 44 Mass.App.Ct. at 451.
Given the case law support for this Court’s conclusion that probation for Richard Aspen was to commence upon his release from confinement, as part of his from and after sentence, there was no clear and outstanding probation order of the court in effect at the time of his alleged contact with his daughter, Jacqueline Cirone. Moreover, even if his probation term was arguably effective at the time of his sentencing, which it appears it was not, the case law is too unclear for this Court to say that the defendant knew his probationaiy terms were in effect at the time of the alleged violation. This legal ambiguity diminishes the clarity of the order required as an element of criminal contempt.
The Grand Jury heard testimony which was read to them from the official court dockets regarding the defendant’s sentencing on March 4, 1998. (Pages 19-24.) The probation sentence was read to them as ten years probation from and after the sentence for rape of a child. There was no mention of the terms of that probation taking effect at the time of sentencing, nor was any other testimony presented by the Commonwealth to indicate that the defendant was not to violate any of these probationaiy terms from the point of incarceration. Based on this limited testimony, the Grand Juiy was not presented with enough evidence to find probable cause that there was a clear and outstanding order of the court, that the defendant knew of the order, and that the defendant clearly and intentionally disobeyed the order in circumstances in which he was able to obey it.
Therefore, this Court concludes (1) there was a legal defect in indicting the defendant for criminal contempt and (2) there was insufficient evidence presented to the Grand Juiy to find probable cause for the indictment of criminal contempt for the violation of the no contact provision of his from and after probation term.
ORDER
This Court finds the evidence presented to the Grand Jury by the Commonwealth provided probable cause to support his indictment for violation of a G.L.c. 209A order. Therefore, the defendant’s Motion to Dismiss his indictment #03-0189-002 on McCarthy grounds is DENIED. This Court finds, however, that the evidence presented to the Grand Jury to support an indictment for criminal contempt for violating an outstanding order of the court was insufficient to support that indictment. Therefore, the defendant’s motion to dismiss indictment #03-0189-001 is ALLOWED.