## COMMONWEALTH *vs.* WALTER HOWARD.

No. 10-P-2223.

Middlesex. December 8, 2011. - May 21, 2012.

Present: CYPHER, KATZMANN, & GRAINGER, JJ.

*Sex Offender. Practice, Criminal,* Sentence, Probation.

In the circumstances of a criminal matter in which the defendant was sentenced to a term of twelve to fifteen years for sexual offenses against minors, with eight years to be served and the remainder of the sentence suspended for ten years, during which time the defendant would be on probation, and in which, after the defendant had been held for three years following the end of his committed sentence at the Massachusetts Treatment Center (treatment center) pending the trial of the Commonwealth's petition for the defendant's civil commitment as a sexually dangerous person, a Superior Court judge allowed the defendant's motion to dismiss on the grounds of the Commonwealth's failure to timely file qualified examiners' reports and petition for trial, this court concluded that the defendant's probation termination date was ten years after his release from the treatment center, rather than ten years from the beginning of his civil confinement in violation of G. L. c. 123A, § 14(*a*), where all the evidence available of the sentencing judge's intent indicated that the judge intended the defendant to serve a ten-year period of probation on his release into the community [760-762]; and where crediting the defendant for the time he was in civil confinement would run counter to the purposes of probation [762-765].

INDICTMENTS found and returned in the Superior Court Department on October 31, 1991; December 4, 1991; and April 21, 1992, respectively.

A motion for declaration of a probation termination date, filed on October 30, 2009, was heard by *Frances A. McIntyre,* J.

*Matthew T. Fox* (*Douglas H. Hallward-Driemeier* with him) for the defendant.

*Hallie White Speight,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. In this appeal we consider the question of the

proper treatment of the probation component of a split sentence after a period of civil confinement that was later found to be in violation of the requirements set out in G. L. c. 123A, § 14(*a*), for proceedings to commit a defendant as a sexually dangerous person (SDP). We affirm a Superior Court judge's determination that the full probationary term be deemed to begin to run upon the defendant's release from the Massachusetts Treatment Center (treatment center).

*Background.* On November 25, 1992, the defendant pleaded guilty in Superior Court to fourteen counts of sexual offenses against minors, including three counts of rape and abuse of a child under sixteen, four counts of assault with intent to rape a child under sixteen, and seven counts of indecent assault and battery on a person over fourteen. The defendant was sentenced to a term of twelve to fifteen years, with eight years to be served and the remainder of the sentence suspended for ten years, during which time the defendant would be on probation.[1]

The defendant was scheduled for release from prison on June 24, 2000. On June 8, 2000, before the defendant's committed sentence expired, the Commonwealth filed a petition seeking to commit civilly the defendant as a sexually dangerous person pursuant to G. L. c. 123A, § 12, enacted after the defendant's guilty pleas and sentencing.[2] The defendant was committed temporarily to the treatment center pending a determination of probable cause. After a hearing on July 24, 2000, a Superior Court judge found probable cause existed to believe that the defendant was an SDP and temporarily committed the defendant to the treatment center for sixty days in accordance with G. L. c. 123A, § 13(*a*).[3]

---

[1]Additional sentences ran concurrently.

[2]General Laws c. 123A, § 12, was inserted by St. 1999, c. 74, § 8.

[3]On January 28, 2002, the defendant moved to withdraw his guilty pleas on the grounds that they were not intelligently made, but made no arguments regarding the SDP confinement. The sentencing judge denied the motion. On appeal, five of the original guilty pleas were set aside because of deficiencies in the Commonwealth's recitation of the evidence and admissions by the defendant that fell short of establishing indecent assault and battery. *Commonwealth* v. *Howard,* 60 Mass. App. Ct. 1122 (2004). The other convictions were not disturbed. Because at least one conviction from each sentencing group was affirmed, the over-all sentencing structure remained intact.

More than three years after the Commonwealth originally sought to commit civilly the defendant as an SDP, no trial had taken place, and the defendant remained at the treatment center. On October 7, 2003, the defendant filed a motion to dismiss the SDP proceedings, arguing that the Commonwealth was late in its filing of the qualified examiners' reports and in petitioning for trial. On December 22, 2003, a Superior Court judge denied the defendant's motion, ruling that the examiners' reports had been timely filed on September 7, 2000, and that the Commonwealth's oral motion for trial that same day satisfied the requirements of G. L. c. 123A, § 14(*a*). The defendant filed a notice to appeal the dismissal of his motion, but did not pursue it.

Three years later, the defendant was still being held at the treatment center and no trial had yet taken place to determine whether the defendant should be civilly committed as an SDP. In December, 2006, the defendant filed a motion for reconsideration of the court's previous denial of his motion to dismiss, in light of *Commonwealth* v. *Gross*, 447 Mass. 691 (2006), and a renewed motion to dismiss. A Superior Court judge granted the defendant's motions, finding that an oral motion for trial was insufficient to satisfy the requirement in G. L. c. 123A, § 14(*a*), that the Commonwealth's "petition [be] timely filed."[4] Moreover, the judge stated that the continued detention subjected the defendant to "manifest injustice" and acknowledged that the denial of his earlier motion for release had been "clearly erroneous." The Commonwealth did not appeal from this decision, and the defendant was released on January 4, 2007.

Upon release from the treatment center, the defendant began to serve the term of probation associated with his sentence. On October 30, 2009, the defendant filed a motion for declaration of a probation termination date, contending that his probation should terminate on September 23, 2010, in light of his confinement from September 22, 2000, until January 4, 2007, in violation of G. L. c. 123A, § 14(*a*). A Superior Court judge

---

[4]General Laws c. 123A, § 14(*a*), inserted by St. 1999, c. 74, § 8, requires that the petition "be made within 14 days of the filing of the report of the two qualified examiners"; if the petition "is timely filed within the allowed time," then a trial by jury is to be held "within 60 days."

disagreed, ruling that the defendant's probation termination date is January 4, 2017, ten years after his release from the treatment center. This appeal followed.

*Discussion.* The issue of the proper treatment of probation after a period of civil confinement later found to be in violation of G. L. c. 123A, § 14(*a*), is one of first impression. Contrast *Commonwealth* v. *Sheridan*, 51 Mass. App. Ct. 74, 75-77, 79 (2001) (*Sheridan*) (where defendant had been lawfully committed as SDP, probationary term began after defendant was released from treatment center due to finding he was no longer sexually dangerous). See also *Commonwealth* v. *Goodwin*, 458 Mass. 11, 13 (2010) (*Goodwin*) (same). Because the motion judge only considered documentary evidence and did not hold an evidentiary hearing, our review is de novo. See *Commonwealth* v. *Fremont Inv. & Loan*, 452 Mass. 733, 741 (2008), quoting from *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 616 (1980) ("[I]f the order was predicated solely on documentary evidence we may draw our own conclusions from the record").

On appeal, the defendant argues that the motion judge incorrectly interpreted the sentencing judge's intent when she ruled that the defendant's probation will not end until 2017 — ten years after his release from the treatment center. The defendant claims that the sentencing judge intended that his supervision by the Commonwealth be complete after eighteen years absent additional misconduct, meaning that the defendant's probation should have ended in 2010. We disagree.

The sentencing judge died in 2005. "When construing a sentencing order we look to the intent of the judge." *Commonwealth* v. *Bruzzese*, 437 Mass. 606, 615 (2002). After reviewing the record, we see no indication that the sentencing judge intended to strictly limit the period the defendant was under Commonwealth supervision to a maximum of eighteen years inclusive of incarceration and probation. The judge did not speak in the sentencing proceeding of a fixed term of "Commonwealth's control" or of the possibility that the defendant might serve some portion of his probation while confined. Cf. *Commonwealth* v. *Juzba*, 44 Mass. App. Ct. 457, 459-461 & n.3 (1998). Instead, all the evidence available, apart from the sentence

itself, indicates that the sentencing judge intended the defendant to serve a ten-year period of probation upon release into the community. At sentencing, the Commonwealth argued that "a very long suspended sentence is necessary to ensure that the defendant is supervised *upon his release*. Treatment is a very essential component of this supervision. It's necessary to teach him how to control his behavior, and to some degree to rehabilitate him, if that's possible, your Honor." (Emphasis supplied.) The sentencing judge appears to have agreed with this assessment by rejecting the defendant's suggestion of a five-year suspended sentence and instead imposing a ten-year suspended sentence. Moreover, the conditions of probation imposed by the sentencing judge (including no contact with the victims and no unsupervised contact with minors) are further evidence that the judge intended that upon his release into the community, the defendant was to be subject to supervision for the ensuing ten-year period.

The judge's intent, manifested in the way the sentences were structured, reflects "[t]he two principal goals of probation," namely, "rehabilitation of the defendant and protection of the public." *Goodwin*, 458 Mass. at 15. See generally *Commonwealth v. Power*, 420 Mass. 410, 414-415 (1995), cert. denied, 516 U.S. 1042 (1996). "Probation . . . is a legal disposition which allows a criminal offender to remain in the community subject to certain conditions and under the supervision of the court." *Sheridan*, 51 Mass. App. Ct. at 76, quoting from *Commonwealth v. Durling*, 407 Mass. 108, 111 (1990). We are confident that the sentencing judge was aware of these purposes and confident that the intervening civil confinement "did not change the sentencing judge's intent to have the defendant supervised upon his release from custody." *Sheridan*, 51 Mass. App. Ct. at 77.[5]

Our conclusion is also informed by the sentencing judge's rejection in 2003 of the defendant's contentions in a "motion to enforce plea contract and sentencing," brought pro se, that the

---

[5]We also reject the defendant's characterization of the motion judge's ruling as an extension of the defendant's probation. Because, as discussed *supra*, the probationary period presently being served complies with the sentencing judge's intent that the defendant be supervised upon his release from custody into the community, there was no "extension" of probation by the motion judge.

Commonwealth was violating its plea agreement by confining him at the treatment center on an SDP petition, that his "plea contract" with the Commonwealth "provided that he would be released after eight years of confinement," and that the judge should order "specific performance" of that contract by ordering his release. Citing *Commonwealth* v. *Albert A.*, 49 Mass. App. Ct. 269, 271 (2000), the sentencing judge ruled that there was no breach of the plea agreement because "possible commitment as a sexually dangerous person is a civil remedy independent of any criminal proceedings."[6]

The defendant next argues that fairness requires that he receive credit for the time that he spent in civil confinement against his probation. We disagree that this is an appropriate remedy for the improper period of civil commitment. Here, crediting the defendant for the time that he was in civil confinement would run counter to the purposes of probation. See *Sheridan*, 51 Mass. App. Ct. at 76-77.

Probation is granted "to enable the person to get on his feet, to become law abiding and to lead a useful and upright life under the fostering influence of the probation officer." *Goodwin*, 458 Mass. at 15, quoting from *Mariano* v. *Judge of Dist. Court of Cent. Berkshire*, 243 Mass. 90, 93 (1922). "While committed to the treatment center, the defendant was separated from society and in an institutionalized setting that eliminated any need for the supervision of a probation officer. . . . The two goals of probation — rehabilitation under the supervision of a probation officer and the protection of society — are only brought into play when the offender is released into the community." *Sheridan*, 51 Mass. App. Ct. at 77. Here, as in

---

[6]See also *Commonwealth* v. *Bruno*, 432 Mass. 489, 499 (2000) ("The [SDP] statute is neither punitive in intent or effect, nor does it constitute an ex post facto law"); *Commonwealth* v. *Shindell*, 63 Mass. App. Ct. 503, 505 (2005) ("Generally, under Massachusetts law, failure to inform a defendant of collateral or contingent consequences of a plea does not render a plea involuntary"). See generally Smith, Criminal Practice and Procedure § 23.59 (3d ed. 2007). Cf. Mass.R.Crim.P. 12(c)(3)(B), as appearing in 442 Mass. 1513 (2004) ("The judge shall inform the defendant on the record, in open court . . . of any different or additional punishment based upon subsequent offense or sexually dangerous persons provisions of the General Laws, if applicable . . .").

*Sheridan*, the purposes of probation can only be fulfilled once the defendant is out in the community.

The defendant argues that his case is distinguishable from *Sheridan* because he was never lawfully adjudicated to be a sexually dangerous person and thus, unlike the defendant in *Sheridan*, suffered "adverse consequence[s] with respect to his liberty." Contrast *Sheridan*, 51 Mass. App. Ct. at 78. While we agree that the cases are different in this respect, we disagree that this difference entitles the defendant to credit against his probation term for the term of his civil confinement. Decreasing the defendant's term of probation would frustrate the sentencing judge's intent that the defendant be supervised for a ten-year period of probation upon release. In addition, a shorter period of probation would jeopardize the goals of rehabilitation and public protection.

Indeed, in another case we rejected a defendant's argument

> "that once he was found not to be subject to the rehabilitative condition of confinement as a sexually dangerous person, he should not be subject to probation conditions, pursuant to G. L. c. 276, § 87, tailored to be responsive to his potentially continuing propensities. There is no support for such a position. One may be found not a sexually dangerous person for purposes of civil confinement, but may still pose a sexually dangerous risk to others without some supervision, restriction, or attempted rehabilitation outside of confinement."

*Commonwealth* v. *Morales*, 70 Mass. App. Ct. 839, 847 (2007). See *Commonwealth* v. *Goodwin*, 414 Mass. 88, 93-94 (1993) ("it is recognized that recidivism rates among child molesters are particularly high"); *Commonwealth* v. *Lapointe*, 435 Mass. 455, 460 (2001) (given high recidivism rates, residence restriction to keep offender away from children was permissible probation term).[7]

---

[7] The defendant objects to the judge's reference to "a 2006 opinion by Dr. Ira Silverman in which he concludes that Mr. Howard meets the legal criteria for sexually dangerous persons. Dr. Silverman believed in 2006 that Mr. Howard would be highly likely to reoffend sexually if released into the community." We do not address this objection as that 2006 opinion is not material to our analysis here.

The defendant also argues that he is entitled to credit for the years that he spent in civil confinement because his situation is "identical in every relevant respect to that of a prisoner facing dead time."[8] To avoid dead time, the time a defendant spends in custody prior to his or her sentence may be credited against the defendant's term of incarceration. See, e.g., *Commonwealth* v. *Grant*, 366 Mass. 272, 273-274, 276 (1974); *Commonwealth* v. *Foley*, 15 Mass. App. Ct. 965, 966 (1983). However, the defendant cites no cases, and we are aware of none, where a defendant has received credit against a probationary term for time spent incarcerated or in civil confinement. In the case of a prisoner facing incarceration, a day spent confined awaiting trial is the functional equivalent of a day spent incarcerated. For the reasons described above, however, probation is significantly different from incarceration or civil confinement. A day spent confined or incarcerated is not the functional equivalent of a day spent out in the community under the supervision of a probation officer. Thus, the defendant's analogy to dead time fails.[9]

The Commonwealth notes the Superior Court judge's finding that "[d]uring the time his SDP petition was pending, [the defendant] was represented by at least six successive attorneys. . . . He bears some weight for the time the case took to reach a conclusion."[10] The judge further commented: "I have examined the docket on the case. It received considerable court attention as the parties prepared to litigate. [The defendant] did not languish, mouldering at the [t]reatment [c]enter. I infer from the docket entries that he was highly active in his own defense. Neither he nor his attorneys ever sought to advance the matter

---

[8]"[T]he term 'dead time' [is used] to refer to time spent in confinement under an invalid sentence for which no day-to-day credit is given against any sentence." *Milton* v. *Commissioner of Correction*, 67 Mass. App. Ct. 253, 256 n.4 (2006), quoting from *Lynch, petitioner*, 379 Mass. 757, 759 n.1 (1980).

[9]For the first time on appeal, the defendant argues that delaying the start date for his probation amounts to impermissible tolling. Since he failed to raise this argument below, we need not reach the issue on appeal. See Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[10]The motion judge noted that after the withdrawal of the fourth attorney, a prior Superior Court judge ordered that no new counsel be appointed. In so observing, the motion judge pointed to the statement in Dr. Silverman's report, see note 7, *supra*, that the defendant likely suffers from oppositional defiant disorder.

for trial." In any event, we do not condone the fact that the defendant was confined for more than six years in violation of G. L. c. 123A, § 14(*a*). However, decreasing the defendant's probation is not a proper remedy and would be contrary to the intent of the sentencing judge. Dismissal of the SDP petition was the appropriate remedy for the Commonwealth's violation of G. L. c. 123A, § 14(*a*). See *Commonwealth* v. *Gross*, 447 Mass. 691, 693 (2006).[11]

> *Order declaring probation ter-*
> *mination date of January 4,*
> *2017, affirmed.*

---

[11]The defendant states, with respect to potential remedies, that he "asks only for credit against his original term of probation for the time he served in unlawful confinement, not for any change in sentence." He further acknowledges that a motion to revise or revoke his sentence pursuant to Mass. R.Crim.P. 29(a), 378 Mass. 899 (1979), is not available to him because "he did not bring a motion within 60 days of sentencing, and the basis for relief is not a defect in the sentence as imposed, but rather the Commonwealth's conduct years afterward." While noting that Mass.R.Crim.P. 30(a), as appearing in 435 Mass. 1501 (2001), has no temporal bar and is available to defendants serving probation, *Commonwealth* v. *Azar*, 444 Mass. 72, 76-77 (2005), the defendant states that it is not available to him since it is directed at the legality of the sentence itself, not to postsentencing events. See *Commonwealth* v. *McGuinness*, 421 Mass. 472, 475 (1995). We therefore do not consider Mass.R.Crim.P. 29(a) or Mass.R.Crim.P. 30(a) in our analysis.