NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1254                                          Appeals Court

COMMONWEALTH  vs.  ALBERT PACHECO.


No. 17-P-1254.

Suffolk.      September 5, 2019. - December 9, 2019.

Present:  Rubin, Massing, & Englander, JJ.


Practice, Criminal, Revocation of probation, Sentence.  Due
    Process of Law, Probation revocation, Sentence.  Sex
    Offender.  Practice, Civil, Sex offender, Civil commitment.
    Judicial Estoppel.



    Indictments sworn to and received in the Superior Court
Department on July 31, 1997.

    Motions to dismiss notice of probation violation and to
terminate probation, filed on April 11, 2017, were heard by
Beverly J. Cannone, J.


    Mary O'Neil, Assistant District Attorney, for the
Commonwealth.
    Vivianne E. Jeruchim for the defendant.


    ENGLANDER, J.  The Commonwealth appeals from an order that

dismissed probation violation proceedings against the defendant

because the defendant's probation had ended before the alleged

violations occurred.  The case requires us to consider whether

the defendant's term of probation began when his prison sentence ended, where the defendant was not discharged from custody when his prison sentence ended but instead was committed to the Massachusetts Treatment Center (treatment center) as a sexually dangerous person.  We conclude that in light of the plain language of the defendant's sentence, his probation began upon his release from prison and while he was committed to the treatment center, and ended before the alleged violations occurred.  We also conclude that the doctrine of judicial estoppel does not prevent the defendant from asserting that his probation had ended.  We accordingly affirm the order under appeal.

Background.  In 1997, the defendant pleaded guilty to three offenses -- indecent assault and battery on a child under the age of fourteen (three counts) (offense A), rape of a child (offense B), and assault with intent to rape a child under the age of fourteen (offense C).  He was sentenced to from six to nine years in State prison for offense B.  He was sentenced to probation for offense C, as follows:  "Probation recognized in $100 with probation officer as surety, for the term of [t]en (10) years as to Offense C; to be served from and after release

of incarceration on [offense B]."[1]  At the time of sentencing the defendant was not civilly committed as a sexually dangerous person pursuant to G. L. c. 123A, nor were such proceedings pending.

The defendant concluded his sentence for offense B in 2005, but rather than being released he was civilly committed to the treatment center.  Approximately ten years later, in August of 2015, after a trial pursuant to c. 123A, § 9, a jury concluded that the defendant was no longer sexually dangerous, and he was discharged.  During that 2015 trial, several of the defendant's witnesses -- including a probation officer and three experts -- testified that if the defendant were discharged from the treatment center he would be subject to probation for ten more years.  The defendant's order of discharge required that he "report to the Bristol Superior Court Probation Department within 24 hours of release."

On February 28, 2017, the Superior Court probation department issued the defendant a notice of surrender for alleged probation violations.[2]  The defendant moved to dismiss

_____

[1] The defendant received an identical concurrent sentence of probation on offense A.  There were several special conditions of probation, discussed infra.

[2] The probation department first issued a notice of surrender for the following alleged violations:  failure to report to the probation department; failure to provide verification of sex offender registration; failure to provide

the probation violation proceeding, arguing that his ten years of probation had concluded in 2015, over a year before the alleged violations occurred. The Commonwealth disagreed, arguing (1) that the defendant's probation did not begin until he was released from his sexually dangerous person commitment, and (2) alternatively, that the defendant was "judicially estopped" from contending that his probation had concluded, because the defendant had presented the opposite position through evidence and argument in his 2015 trial. A judge of the Superior Court (motion judge) nevertheless dismissed the probation violation proceedings, ruling that under the sentence's plain language the probation commenced on the defendant's release from incarceration for offense B, and that there was no sound basis to "suspen[d] or stay" execution of that sentence due to the defendant's civil commitment. This appeal followed.

Discussion. 1. Construing the sentence. The first issue is the proper understanding of the defendant's sentence, and in particular, when his probation commenced. We construe a court order as we would any other legal document, with the touchstone

---

verification of sex offender treatment; and failure to pay probation supervision fees. On April 22, 2017, the probation department amended the notice to include additional alleged violations: attempt to commit a crime; forgery; and uttering a forged instrument.

being the intent of the judge.  Commonwealth v. Bruzzese, 437 Mass. 606, 615 (2002).  United States v. Spallone, 399 F.3d 415, 424 (2d Cir. 2005).  Thus, as with the construction of any legal document, we begin with the text.  See Southern Union Co. v. Department of Pub. Utils., 458 Mass. 812, 820 (2011) (contract interpreted "according to its plain meaning").  Where the language employed is unambiguous we need look no further.  Spallone, 399 F.3d at 424.  See Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008) ("Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent").  Compare Commonwealth v. Ruiz, 453 Mass. 474, 480-481 (2009) (sentence could not be construed to have probation begin during incarceration, where language of sentence did not give fair notice of same).

Here, the text of the judge's sentence is unambiguous:  the probation begins "from and after the release of incarceration on [offense B]."  The defendant's incarceration for offense B was from six to nine years, and he completed serving that "incarceration" no later than 2005.[3]  Under the plain language of the sentence, the defendant's probation began then.

---

[3] The defendant's civil commitment pursuant to G. L. c. 123A serves different purposes, is distinct from any criminal penalty, and does not constitute "incarceration."  See, e.g., Hill, petitioner, 422 Mass. 147, 154, cert. denied, 519 U.S. 867 (1996).

The Commonwealth takes the opposite position, because in its view the sentencing judge did not intend the defendant's probation to begin until the defendant was released into the community. Among other things, the Commonwealth points to the judge's special conditions of probation, some of which would apply only once the defendant were released to the community.[4] The Commonwealth accordingly argues that this case is indistinguishable from our decision in Commonwealth v. Sheridan, 51 Mass. App. Ct. 74 (2001).

While Sheridan involved similar factual circumstances to those at issue, its reasoning does not control here. In

---

[4] The special conditions included:

"14. You are to have no direct or indirect contact with the victim(s) of this case(s) or their families.

"15. You are to attend sexual abuse perpetrator counseling at your expense as directed by the Probation Department.

"16. You are not to reside in a household with minor children except your own and that you have no unsupervised contact with minor children except with the permission of the Probation Department.

"17. You are not to be employed in a job that puts you into contact with minor children on a regular basis except with the permission of the Probation Department.

"18. You are not to perform voluntary activities that put you into contact with minor children.

"19. You are to report to the New Bedford Superior Court Probation Department within 72 hours of your release."

Sheridan, the defendant's probation was ordered to start "from and after any sentences [he] is now serving." Sheridan, 51 Mass. App. Ct. at 75. This court reviewed the facts and concluded that the sentencing judge did not intend probation to start if the defendant were civilly committed, but only intended probation to commence once the defendant was released into the community. Id. at 77. The decision accordingly turned on a determination of the sentencing judge's intent, and on the defendant's particular facts.

We cannot reach the same conclusion here that we did in Sheridan. The best evidence of the sentencing judge's intent is the language he employed, see, e.g., 135 Wells Ave., LLC v. Housing Appeals Comm., 478 Mass. 346, 354 (2017) (construing statute); United States v. Flynn, 49 F.3d 11, 13-15 (1st Cir. 1995), and here the judge's language is unambiguous: probation commences "from and after release of incarceration on [offense B]." This language leaves no room to delay commencement of probation. The judge's special probation conditions do not cause us to alter our conclusion; while it is true that some of those conditions would not apply until the defendant had been released into the community, others would apply even while he was civilly committed.[5] More importantly, the fact that the

---

[5] For example, the prohibitions on direct or indirect contact with the victim, and the prohibitions on contact with

judge's special conditions of probation anticipated that the defendant would have been released to the community does not mean that the clear language as to when probation commenced can be ignored. When the judge ordered those special conditions, it was unknown whether civil commitment would occur, and in any event, by its nature the existence and length of any civil commitment is not predictable; accordingly, at the time of sentencing, the judge would have anticipated a release to the community during the probation period. The judge's decision to include such conditions thus does not tell us that he intended to delay probation until after any release from civil commitment.[6]

Our conclusion is bolstered by the general rule that "[s]entences are to be executed forthwith unless suspended or stayed for the exceptional reasons permitted by law."

---

minor children, could have had application while the defendant was committed to the treatment center. So, too, could the requirement to attend sex offender treatment.

[6] The Sheridan opinion, 51 Mass. App. Ct. at 77, reasoned that the "purposes of probation" were better served in that case by having probation commence after release into the community. While we do not question that conclusion, it is the terms of the sentence that must control. If the judge here had said explicitly that probation did not commence until release to the community, that would present a different case.

While the Supreme Judicial Court referenced the Sheridan decision in a footnote in Commonwealth v. Bunting, 458 Mass. 569, 570 n.3 (2010), the reference was for background purposes, and was not part of any holding in the case.

Commonwealth v. McLaughlin, 431 Mass. 506, 520 (2000), quoting Mariano v. Judge of Dist. Court of Cent. Berkshire, 243 Mass. 90, 92 (1922). What the Commonwealth contends, in essence, is that the commencement of the defendant's probation was presumptively stayed by the intervening event that he was civilly committed. In McLaughlin, the Supreme Judicial Court grappled with a related issue, where a sentencing judge had suspended the commencement of a defendant's manslaughter sentence because the defendant had been civilly committed (and indeed, where the defendant had been found not guilty by reason of insanity as to first degree murder charges). After discussing the case law and the limited grant of stay authority in Mass. R. Crim. P. 31, 378 Mass. 902 (1979), the McLaughlin court held that the sentencing judge lacked the power to so suspend the defendant's sentence. McLaughlin, 431 Mass. at 520. While McLaughlin addressed a stay of incarceration, rather than a delay of the commencement of probation, its reasoning nevertheless is instructive. Here, where the judge used unambiguous language to define when probation commenced, there is no sound basis to delay that commencement. Compare Ruiz, 453 Mass. at 480. In short, the defendant's probation began when he was released from incarceration on offense B, and it ended ten years later, in 2015, before the alleged violations at issue occurred.

2.  <u>Judicial estoppel</u>.  Alternatively, the Commonwealth contends that the defendant is judicially estopped from taking the position that his probation ran while he was civilly committed.  The Commonwealth's contention is not without force; the defendant concedes[7] that in his 2015 sexually dangerous person trial he put on evidence, and argued, that if released he would remain on probation for ten more years.  The result of that trial was that the jury found the defendant no longer sexually dangerous.  We conclude, however, that a criminal sentence cannot be altered by judicial estoppel.

We may assume without deciding that the basic elements of judicial estoppel are present here.  In <u>Otis</u> v. <u>Arbella Mut. Ins. Co</u>., 443 Mass. 634, 640-641 (2005), the court stated that

> "two fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel. First, the position being asserted in the litigation must be 'directly inconsistent,' meaning 'mutually exclusive' of, the position asserted in a prior proceeding. . . . Second, the party must have succeeded in convincing the court to accept its prior position."

---

[7] The Commonwealth did not provide a transcript of the August 2015 sexually dangerous person trial, or any other relevant pleadings, and accordingly we do not have the original record of the evidence the defendant adduced.  Such evidence ordinarily would be needed when evaluating an assertion of judicial estoppel.  However, in her decision the judge summarized the testimony of the defendant's witnesses, to the effect that if released the defendant would be under supervised probation for ten more years.  The defendant does not contest the judge's summary on appeal.

The defendant's position in this case -- that his probation ended in 2015 -- is "directly inconsistent" with the position he took in his sexually dangerous person trial.  In addition, there is at least a fair argument that the defendant "succeeded" in his contentions to the sexually dangerous person jury, because after the defendant emphasized that he would remain on probation, the jury found that the defendant should no longer be considered sexually dangerous.[8]

---

[8] The defendant asserts (and the motion judge ruled) that the success element is not met, because one cannot know what the jury took into account in reaching its decision.  Although we need not decide the issue, we note that if this argument were correct it would render judicial estoppel inapplicable to many sets of facts where the prior proceeding was a jury trial.  The purpose of the doctrine is to prevent litigants from "playing fast and loose with the courts" by adopting a position in litigation, "secur[ing] a favorable decision," and thereafter adopting "a contradictory position in search of legal advantage" (citations omitted).  Otis, 443 Mass. at 641-642.  Such actions are no less undesirable because the inconsistent position was asserted to a jury.  Indeed, Otis is itself a case where the plaintiff was estopped due to a position he asserted before a jury.  Id. at 642-643.  See also Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953) (applying judicial estoppel based upon position previously asserted in jury trial).

The defendant also suggests that the success element is not met because his argument about probation was not particularly important to the issues before the jury.  This argument might have some force, in the sense that judicial estoppel should not apply to assertions that were tangential or collateral in the prior action, but we need not reach the argument here.  The question whether the success element has been met will necessarily depend on the facts of each case.  Otis, 443 Mass. at 640-642.

But while we are not unsympathetic to the Commonwealth's concern, we nevertheless hold that here the doctrine of judicial estoppel cannot afford the relief the Commonwealth requests. In essence, the Commonwealth is seeking to extend the length of the defendant's sentence based upon the defendant's incorrect in-court representations as to his probation term. A sentence, however, is a court order and a matter of public record, and its contours are defined as a matter of law. See, e.g., Carlino v. Commissioner of Correction, 355 Mass. 159, 162 (1969). The terms of the sentence do not implicate the defendant alone, but must be executed by various actors -- the judge, the courts, the corrections department, and the probation department, in particular. Once established by the judge, it follows that the terms of a sentence cannot be varied as a result of the defendant's in-court representations. To be clear, we are not saying that judicial estoppel cannot apply in criminal matters, if the appropriate circumstances are shown.[9] See Commonwealth v.

---

[9] Nor do we hold that judicial estoppel cannot apply to assertions on questions of law, as opposed to questions of fact. See Bay State Gas Co. v. Department of Pub. Utils., 459 Mass. 807, 818 (2011). Although judicial estoppel is less likely to apply to assertions of law, application of the doctrine is too nuanced for such a bright line rule. Compare Law Office of John H. Eggertsen, P.C. v. Commissioner of Internal Revenue, 800 F.3d 758, 766 (6th Cir. 2015) (judicial estoppel does not apply to bar reversal of position on issue of law), with Republic of Ecuador v. Connor, 708 F.3d 651, 658 (5th Cir. 2013) (applying judicial estoppel to prevent assertion of contradictory legal position).

Gardner, 67 Mass. App. Ct. 744, 747 (2006).  Rather, we simply hold that judicial estoppel cannot apply to extend the length of a sentence already imposed.

Order entered June 23, 2017, affirmed.