7 F.3d 232
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jim L. BUNTING, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent.
 No. 92-3879.
 United States Court of Appeals, Sixth Circuit.
 Sept. 22, 1993.
 
 Before: KEITH and JONES, Circuit Judges; and PECK, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Jim L. Bunting petitions for review of a decision of the defendant Railroad Retirement Board ("Board") denying his request for exclusion of a payment of a portion of a lien against proceeds of a personal injury recovery. We grant his request and reverse the Board's decision.
 
 
 2
 * While driving on-the-job for the Tuscola & Saginaw Bay Railroad Company on February 7, 1986, Bunting was hit from behind by another vehicle, causing his vehicle to roll onto its side. Bunting sustained a severe neck injury in the accident, which was not his fault. The injury, which required surgery, prevents him from returning to his former position as a skilled laborer for the railroad.
 
 
 3
 Bunting filed claims for sickness benefits and received them during the period from April 5, 1986, through December 29, 1988. The payments came under a statutory program designed both to provide injured employees with income pending settlement of personal injury claims and to reimburse the government after those claims are settled.
 
 
 4
 Under section 12(o) of the Railroad Unemployment Insurance Act, 45 U.S.C. § 362(o) (1988), the Board may pay benefits to an injured employee during the pendancy of any suit for damages arising from an accident. When the Board does so, it holds a lien against any employee tort recovery that is based on the injury for which the employee received the benefits. The Board may be reimbursed the lesser of the full amount of the sickness benefits paid or the net amount of the damages paid to the employee. 20 C.F.R. § 341.5 (1993).
 
 
 5
 Bunting instituted tort proceedings against a third party, and the Board first notified petitioner of the lien against his eventual tort proceeds on January 12, 1987. The Board updated its lien with counsel for Bunting from time to time during the course of Bunting's state court tort litigation.
 
 
 6
 On November 28, 1989, nearly one year after the Board's final payment to Bunting, counsel requested and received from the Board an updated status report regarding the total benefits paid to petitioner. He was informed that the total lien amount was $8400. The Board subsequently confirmed this figure in a letter dated December 27, 1989. That confirmation emphasized that $8400 is the amount that must be paid on the lien after settlement of the tort claims. J.A. at 18.
 
 
 7
 Petitioner's counsel subsequently relied on the $8400 figure in mediating and ultimately settling his client's claim. A panel of three state court mediators awarded petitioner $8400 specifically to compensate him for the outstanding lien owed to the Board. Petitioner further states that he later settled his claim for a negotiated amount of $75,000, including attorneys fees, based on the figure given him by the Board.
 
 
 8
 This settlement occurred during the week of March 26, 1990, and the Release applicable to it was executed on March 29. After that date, petitioner received a Notice of Lien dated April 3, claiming he owed $11,424.64. In response, on April 5, counsel for petitioner requested a "review" from the Board because he had already negotiated a settlement for Bunting based on the $8400 figure.
 
 
 9
 With a letter dated April 24, Bunting submitted a check to the Board for $5460, intended to cover "the net lien to which the Board is entitled." J.A. at 23. The amount apparently represents $8400 minus a pro rata share of attorneys fees and costs.
 
 
 10
 On May 24, the director of the Board's Bureau of Unemployment and Sickness Insurance returned Bunting's check and declined to accept reimbursement of less than $11,574.64, a slight increase over the amount reported by the Board on April 3. This amount, the parties now recognize, is the actual sum of the sickness benefits Bunting received. At this point, it had been about one-and-a-half years since Bunting last received a disability check from the Board.
 
 
 11
 Bunting appealed the director's decision to the agency's Bureau of Hearings and Appeals, which advised him that in accordance with Board regulations, no hearing would be held because the issue presented was solely one of law. In a decision dated April 8, 1991, the hearings officer found that the Board was entitled to reimbursement of the full amount of sickness benefits it had paid to Bunting.
 
 
 12
 Bunting then appealed to a three-member Railroad Retirment Board panel on May 24, 1991. On May 14, 1992, a majority of the Board affirmed and adopted the decision of the hearings officer. A dissenting member wrote that Bunting should only owe $8400. This appeal followed.
 
 II
 
 13
 Petitioner claims the Board should be equitably estopped from recovering the full amount of the sickness benefits paid to him because he relied to his detriment on an inaccurate statement and letter from the Board as to the amount of the Board's lien. The Board admits making the inaccurate statement on which petitioner relied.
 
 
 14
 The Board does not contest whether the petitioner can make out a traditional estoppel claim. As the Board concedes, "[t]he elements of estoppel are not at issue in the present case; the question involved here is whether estoppel can be asserted against the Board, an agency of the United States government." Board's Br. at 15. When public funds are involved, the Supreme Court has adopted " 'a most strict approach to estoppel claims.' " Michigan v. City of Allen Park, 954 F.2d 1201, 1217 (6th Cir.1992) (quoting Office of Personnel v. Richmond, 496 U.S. 414, 426 (1990).
 
 
 15
 The Richmond decision makes clear that estoppel against the government is strongly disfavored. In Richmond, a Navy employee received erroneous advice from a government employee regarding how much income he could earn without exceeding a statutory limit that would disqualify him from a disability annuity. Relying on the misinformation, Richmond surpassed the limit and lost six months of benefits. The Court held that because paying the benefits to Richmond was prohibited by statute, the erroneous advice did not estop the government from denying them. Though the Court initially discussed the rarity of estoppel against the government in broad terms, id. at 421-23, it described its holding as a "narrower ground of decision" based on the Appropriations Clause of the Constitution. Id. at 423.
 
 
 16
 It is important to recognize that, even in the initial dicta in Richmond, the Court expressly refused to accept the government's argument that estoppel can never run against the government. Id. at 421-23; see also Heckler v. Community Health Servs. of Crawford, 467 U.S. 51, 60-61 (1984) (Court refuses to say there are no cases "in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government."). Noting these cases, we recognized in Allen Park that the Court had not adopted a "flat rule" prohibiting estoppel against the governemnt. 954 F.2d at 1217.
 
 
 17
 After careful consideration, we hold that the government is equitably estopped here from collecting $11,574.64 on the lien. Though we recognize the policy disfavoring estoppel against the government, we feel that the Board's actions "threaten to work a serious injustice and the public's interest will not be unduly damaged by the imposition of estoppel." Watkins v. United States Army, 875 F.2d 699, 708 (9th Cir.1989) (en banc) (finding equitable estoppel against the government), cert. denied, 498 U.S. 957 (1990); see also Lehman v. Burnley, 866 F.2d 33, 37-38 (2d Cir.1989) (same); USA Petroleum Corp. v. United States, 821 F.2d 622, 625-27 (Fed.Cir.1987) (same).
 
 
 18
 In holding that the interests of justice support equitably estopping the Board from collecting more than $8400, we place special emphasis on the facts of this case. In particular, we emphasize: that Bunting attempted to find out the amount of the lien in order to comply responsibly with the law; that the Board did not merely fail to inform Bunting of his correct lien amount but instead affirmatively stated and then confirmed an erroneous figure; that Bunting relied on that figure in his mediation; that the mediators relied on that figure as well; that Bunting relied on the figure in his settlement; and that it was almost a year and a half after his final benefit payment before the Board finally informed him of the correct figure.
 
 
 19
 Finally, we note that under the Federal Claims Collection Act, 31 U.S.C.A. § 3711 (West 1988 & Supp.1993), Congress permits the compromise of certain claims, such as the lien here. See 4 C.F.R. § 103.1(a) (agency heads may exercise compromise authority where the claim does not exceed $20,000). The compromise authority shows that Congress did not intend to bar partial relief from a lien in all cases. We believe Congress intended to allow relief where, as here, it would work a serious injustice not to do so.
 
 III
 
 20
 Because we find the Board estopped from collecting more on the lien than the amount it informed petitioner of, and upon which he relied, we REVERSE the decision below and ORDER disallowed from recovery any amount exceeding $8400.
 
 
 
 *
 Hon. John W. Peck, senior circuit judge, deceased September 7, 1993